Thank you. May it please the court. Good morning Judge Cole, Judge Boggs and Judge Strange. I'm Michael Cox. I'm counsel on behalf of the plaintiff appellant William Elias, Elias Realty, TaxFaster, Moody, Keegan, Nelson and Associates. Thank you for the opportunity for oral argument. We are here, oddly enough, because on an issue that was aptly stated by our opponents Freddie Mac. The very first sentence of their statement of facts said this, quote, plaintiffs repeatedly and unfairly criticized a district court for accepting Freddie Mac's version of the facts. And that, in fact, is the issue here. That the district court did not accept the well-pled allegations as true made by the plaintiffs and therefore was unable to find a plausible claim or plausible claims. They mis- they misapplied the standard of 12b6 of Iqbal and Trombley. Let me start with the easiest issue and that is the one contested element of 12b2, whether there was malice sufficiently alleged. There is actually six different independent basis's where a reasonable trier fact could find malice for the tortious interference counts. First and foremost, there was per se wrong flag committed by Freddie Mac. This was alleged in paragraphs 32 through 35 and 42. Freddie Mac in exhibit C basically told Mr. Elias that we're going to consider putting you on the exclusionary list in essence because you're too successful on behalf of your clients. Well, since 1898, the Michigan Supreme Court has imposed a duty on all real estate brokers to, quote, excuse me, that they are bound, quote, to make the best bargain he can for the principal. And that is a part of the restatement on agency as well. And now codified in Michigan law. Their listing of Mr. Elias and the related entities on the per se wrongful act. Now let me turn to five other separate affirmative allegations which confirm. State for me what you call the, that is obviously we have the physical fact of the threat to put him on the list. Usually you would say, well, the per se wrongful act is murder, defamation, slander. So what is the per se wrongful act in that? That they seek to impair the ability of Mr. Elias and the other plaintiffs to carry out their duties under Michigan law, specifically Michigan compiled law 339.2501 and 2512. Well, but I mean, in any kind of competitive operation, you might say, you're trying to make the other guy not do his duty in the best way possible. That's so that simply saying you're doing X that is competitive or antagonistic isn't per se a wrongful act. It is not, except when you attempt to cower the plaintiffs from performing a statutory duty. But if I could, Judge, let me pivot now to the other five instances which do address the competitive situation you just mentioned. We have Exhibit B, Agent Pearson's November 28th complaint to the Michigan Department of Licensing and Regulatory Affairs. In there, what does he say? He says, quote, Freddie Mac believes these companies and individuals should no longer be able to operate businesses in the state of Michigan. Going back to Judge Boggs' point, that is not a statement of mere refusal to deal with the plaintiffs. That, in fact, is we want to knock you out of being able to do any business, whether it's run a hot dog stand or provide short sale services. Furthermore, when they made this complaint, it was clearly baseless because Laura, the Michigan State entity, made a finding, quote, it was unable to substantiate a violation of the occupational code. What does this mean for a reasonable trier fact? Could a reasonable trier fact conclude that Freddie Mac acted with some improper motive or purpose here, where, in fact, the state didn't act on their complaint, and where, in fact, they say we want to knock you out of doing any business? Let me move to the third instance. The unrebutted response. Counsel, are all of these within the rubric of tortious interference or? Yes. Okay. Yes, absolutely. Clearly, where you want to put someone out of the business, that clearly is tortious interference. Another instance where a reasonable trier fact could find evidence of improper motive. The unrebutted response of Mr. Elias on October 10th. He provided 314 pages of affidavits. They never responded. They never responded. And, in fact, a reasonable trier fact could find. Well, they responded by placing him on the list. They responded by placing him on the list. What you mean is that they didn't explain. They did not explain. What in the rules require them to give him a further explanation? Judge, there is nothing in the rules except this. As we pointed out in the case involving Boyd versus Nationwide Insurance, where Nationwide reported Boyd to the police or governmental agency but did not read their own reports, the Second Circuit said a trier fact could find or could infer malice or improper motive. It's our position that where they did not respond or read and then follow through on the subsequent November complaint with the state of Michigan, that a trier could, need not always, but certainly was a reasonable trier fact could find that that was an instance of malice. And, in fact, if we turn to their own rules, instance number four is where they say you have 10 days to respond. And what do they do during that 10 days? Two days later they go to the servicers and say, we're thinking about putting them on the exclusionary list, which is basically telling them that he's a fraud. He hasn't even got 20% into the response time and they're out talking to others about it. Thinking about it really is true, isn't it? Obviously when they say you have 10 days to respond, they've sent him an indication that they're thinking about taking action against him. But, Judge, clearly, and we'll get to it later on what... There's not a rule of confidentiality that's stated in any of this, is there? Not that they put it in there. But, clearly, they are already stating that, especially when you consider what the exclusionary listing entails, they are calling him a fraud in essence. We suspect him of fraud. This is especially egregious in point number five, where they contact Ms. Fognini. Well, did they contact her or just the mortgage servicer? The mortgage servicer, which is their agent and their co-conspirator for the purposes of this complaint. And, quite frankly, City Mortgage would not know, Ms. Chin of City Mortgage would not know about this consideration but for Freddie Mac, and they reach out... But do you then, you have to have established or reasonably pled the civil conspiracy in order to make the argument you're making now? That's correct. And we do allege a civil conspiracy, Judge. Couldn't they just have been acting in their own interest? You know, they hear somebody's going down on the list and they say, you know what, I'm not going to continue to deal with you. You need to know this because I'm not going to... I mean, the liquidity is the issue throughout this entire thing. And so what they're saying is, well, I'm not going to lose the ability to sell this to a broader market if Elias ends up being placed on the exclusionary list. That's correct, Judge. But where they reach out to Elias' customer, where he has a contractual... But this is... That's Ms. Martin. But in order to say that, you've got to show or got to have reasonably alleged conspiracy because it was not Freddie Mac that did that. That's correct. Okay. We agree. The last and sixth one is the disparate treatment. If you look at exhibit number D, part of their presumptive reason of putting him on the exclusionary list for these entities is that he pushes the borrowers to say they're unable to pay. Well, we see that their own partners, NationStar and IndyMac, do the same thing, but they're not put on the exclusionary list. That reasonable trier of fact could say the disparate treatment is, in fact, evidence of an improper motive or purpose. You have to... Excuse me. I was going to say, do you have any case support for that in the sense that if you have a legitimate purpose for taking some action against this hardware store and you don't do the same thing for that hardware store because it's owned by your son-in-law or your college buddy, does that count as malice? Do you have a case that would say that? I mean, disparate treatment comes in discrimination law. You know, if it were sex or race or something, but do you have any case that would support that? Well, Judge, 12B-6 is about saying whether there's well-pled facts. It's a factual inquiry. And it is not our position that a trier of fact must find that that's evidence of malice or improper motive, but certainly a reasonable trier could. Well, but that's the question I ask you. I understand your theory, but my first reaction would be, is there any support for it, because normally if a certain act is not malicious, the fact that you don't do it universally doesn't make it into malice. So, I mean, I understand your theory. You're just saying you don't have a case that would directly support it. Yeah. It's not our position. They must go after it. I understand that. But you didn't allege that Freddie Mac knew. What you alleged is that these other people are out here doing it also. Don't you have to have that connector piece in order to show malice that Freddie, didn't you have to allege that Freddie Mac knew and failed to act against these other people? Well, Judge, under Federal Rule of Evidence 801, with conspiracy statements and the law of conspiracy. But I'm talking about allegations of the complaint. That's what we're up on. That's correct. However, the reviewing judge has to apply, use their common experience, and judicial expertise, here 801 tells us that a co-conspirator can be implied to know what their co-conspirator does in terms of statements. But you've got to have validly, once again, you've got to have stated a valid conspiracy claim. That's correct, Judge. And that conspiracy would be with Indy Mac and what was it? Indy Mac and Nation Star and all the other servicers of Freddie Mac. They're contractual agents. I don't know where I am on the time because of the questions. I do have a question. Would you address the issue of these prorated taxes that were collected by your client that Freddie Mac says were improper to collect, that its rules and procedures do not permit for the mortgage servicer or lender to collect these fees in advance from the short seller, and that the collection of these prorated property taxes is one of the legitimate bases for being placed on the list? And your client admits to collecting these taxes, as I understand it. Well, Judge, he admits to having a contractual relationship with his client that if certain fees are disallowed, that other property of that client will be used to pay his fees. But that really goes beyond the 12B6 into factual determination. Well, does it, when you admit in the documents attached to the complaint, as I understand it, that you have engaged in that sort of activity, an admission of collecting these fees that are in conflict with Freddie Mac's policies? But, Judge, turning out of the defamation, that does not say that Freddie Mac can defame you by calling you a frog, crook, or cheat, which is what the exclusionary list does do. With that, I'm out of time. Any other questions? Okay. Thank you, Counsel. Thank you, Your Honor. May it please the Court, my name is Gerald Ford, and I represent Freddie Mac. I'd like to start briefly with the FBI affidavit and some things that the plaintiffs said about that in their reply brief. Well, let's assume that we don't take notice of that affidavit. What based on the face of the complaint makes you the winner in this case? Well, they have to prove malice, Your Honor. They can't just show that... They have to have alleged malice appropriately. Thank you. And just to respond to the, you know, five or six points that my adversary made, first on the fact that the plaintiff has a fiduciary duty to his clients, that ignores the fact that Freddie Mac has a duty to protect the integrity of the process. And Freddie Mac has the right to say, you know what? This guy just seems a little too clever, a little too aggressive for us. There is no duty to deal. We cited authority for that in our brief, and I'd also like to point out that Judge Boggs wrote a decision on that in the Havenshire versus Prudential case, which is 595, Fed 312, where the court said, generally speaking, absent an antitrust violation, there is no duty to deal with another company. And that, I think, is the answer to the first point raised by my adversary. In terms of... I'm struggling with the reality here. The reality is you're the gorilla in the room. I mean, when you say, here's what it's going to be, somebody on an exclusionary list, it would have a tendency to have pretty long legs. It would...it really does impact the industry, so to speak, when somebody's placed on this list. I mean, he went out of business, and so I'm struggling with the extent of your ability to impact businesses by placing somebody on the exclusionary list. And I think the thing that concerns me the most is the third component of what being on the list entails, is that you won't do business with someone who has a liais or an excluded person in the chain. Help me understand what it is about having some...an excluded party in the chain of title that makes the mortgage itself inherently risky. Well, Your Honor, just by way of background, Freddie Mac does not itself service the literally millions of loans that it winds up requiring. It relies exclusively on these servicers to collect the funds, to manage the loans. In order to protect the integrity of those mortgages when Freddie Mac resells them on the market to investors, there has to be comfort, assurance that this is a legitimate mortgage, that it's properly being handled, and that all loss mitigation efforts, like short sales, are being properly pursued. If someone in that process is not following the rules or is making misrepresentations, that affects the integrity of the mortgage. It affects the integrity of the entire process. So I think the market... I understand. I understand how it affects the integrity to you. No question. You've got somebody and your rule says you don't get to charge a fee, and they're charging a fee. So that would mean that you would say to that entity, I'm not going to do business with you anymore, period. But the...and that makes it...because it's risky to you. You're losing a lot of money. That's a fair...based on what you're telling me, a fair analysis. But let's say you're the fourth purchaser of a mortgage, and the first guy in the chain dealt with a loss, and it's cleared through somebody else. What is...what makes...what gives you that legitimate business reason to say, I'm not even buying one where you're in the chain of title? How is that risky to the public or to you? Because you're getting your deal at the end. The question is, what happened early on? Well, if Freddie Mac is participating in a short sale that the plaintiff's client produced, Freddie Mac is taking a loss on that. For you, we agree on that. I'm asking you, when your rule goes beyond that, your rule says, not only am I not going to deal with you that I'm placing on the exclusionary list, I'm not going to buy a product in which you have been involved in the chain of title anywhere. And so I'm trying to understand what legitimate business reason you have to take that additional step. Your Honor, I think if we think we're getting burned by the plaintiff's operations, I don't think we have to deal with them anymore. If you're asking me what is the specific harm to the market for that, I will admit that the brunt of the loss falls on Freddie Mac, but I submit that is sufficient for Freddie Mac to take action and sit back and say, they don't have to sit back and say, I don't want to deal with this person. So the question she seems to be raising, and I'm not sure there's a meeting of the minds on the question, is, the question is, is Freddie Mac saying, we not only won't deal with you, we won't deal with anybody who dealt with anybody who dealt with anybody who dealt with you? And number one, is that in fact what you're saying? And number two, then, is there a reason for it? The exclusionary list does say that if someone's on the list and they participated in the mortgage, Freddie Mac... They purchased a what? If they participated in the mortgage process, the mortgage servicing, Freddie Mac will not do business with those people. Even up the chain, in other words, the question is, so his client, or he operates with a particular property. That property, as frequently happened, you know, gets sold to Wells Fargo, and Wells Fargo sells it to somebody else, and then they come to Freddie Mac. Do you, in fact, say, no, we won't do this because he was somewhere up the line? Well, it... Because it makes the property riskier or something, but we seem to be having a question about what are the facts here? Will they, in fact, not do business with the third guy up the chain if Mr. Elias and his company were involved in the chain further back? I believe the answer to that, Your Honor, is correct. Yes, they will not deal with... And is the theory... What is the theory for that? Is it that, you know, once a property, once a product is risky, that risk simply rolls forward to whoever ends up with it? I think it's as simple as that. The process... Once the mortgage loan is infected with this, what we think was improper conduct, that carries forward. Let me ask you this then. I mean, I understand the theory now about the, quote, improper conduct. Why does Fannie Freddie Mac have this rule? Is it that the broker is taking advantage of the seller or of the buyer? That is, that he's getting funds that should accrue to some individual or that he's getting funds that should accrue to Freddie Mac? Well, specifically with the prorated taxes, it is funds that belong to Freddie Mac. Because by definition, in a short sale, Freddie Mac is taking a loss. They are trying to reduce their losses. So they say whatever money comes out of that sale comes to us. So in, you know, the conventional home sale when you go through the HUD 1 or whatever, you do have prorated taxes, and if you've already paid them, then you get them back or you get your prorated share or insurance. Same thing, right? Same thing. Okay. But this, you know, this complaint was dismissed pursuant to Rule 12b-6. And we seem to be debating what facts are and what they're not here. The complaint need only be plausible on its face. So does it not make more sense that this is the sort of matter that should be decided after a fuller development of the record so that it would maybe be decided on a motion for summary judgment? No, Your Honor, I don't think that's the situation here. In terms of the facts, in terms of what the exclusionary policy is, that is a document that was attached to the complaint, it's an exhibit to the complaint, and it is fairly considered on a 12b-6 motion. Under Twombly and Iqbal, these allegations of malice have to be plausible. And we don't have to accept as true his allegations if they are contradicted by public filings. Well, Your Honor, if I could just add, you refer in your brief to the seller service guide regarding whether a service or a real estate agent can collect fees on a short sale. But that's really not part of the complaint. It would seem that we would need further development of the record to determine how such fees could be, what would be proper in terms of collecting those fees. Your Honor, I would respectfully disagree. I think that the law says that documents that are referred to in the complaint that are central to the complaint can be considered on a 12b-6 motion. The plaintiff refers to the guide several times in his complaint. I believe he actually attaches a section of it as an exhibit to the complaint. The guide is a publicly available document online, and we think it's fair under this court's case law to consider things like the guide and things like public records that show that what Mr. Elias was telling Freddie Mac was not accurate, including this whole business with Mr. Glassman, where he says, I never used them as an alias, and public records show that Mr. Glassman's address is the same as Mr. Elias' residence. I don't think you, the court's hands are tied by that situation when the plaintiff says, oh, I allege that you have to accept that it's true. The case law allows the court flexibility to consider public records, things like that. Okay, but am I right that that argument is, in effect, auxiliary to your main argument, which I take it, if put succinctly, is that he says he was keeping these fees, so it's not a question of whether he did it, and here's the guide that shows that that's the reason that we didn't want to do business with him, and that's a legitimate business reason. You don't have to tar him with this additional stuff for you to win. That is correct, Your Honor. The plaintiff admitted when he responded to the Freddie Mac letter of October 1, he submitted an affidavit to Freddie Mac, and in that affidavit, he admitted that everyone knows that you can't prorate taxes. So, what he came up with, again, this is from his own papers, is a system where the seller, he has the seller and the buyer enter an agreement that says the seller waives his right to prorate taxes, but Mr. Buyer, you have to pay my company, Moody Keegan, this $2,500 fee, instead of that. Well, that's a pretty classic circumvention of the rule, and it violates Freddie Mac rule that all proceeds on a short sale are supposed to come to pay. That's what I'm saying. Your argument is that there's no factual development beyond that. To take the other side of it, if your rules say you have to have a $10,000 bank account at all times, and you say we're excluding you because you don't, and he says, yes, I do, here's my bank statement, then you would have a factual issue, would you not? I think so, Your Honor. Yes. I just want to just briefly address a couple arguments in the reply brief that the plaintiff submitted. With respect to the FBI affidavit and some of the other public filings, they described them as after the fact evidence and therefore not properly considered. We object to that argument because it was never presented to the district court. It's obviously not fair to the district court to raise that for the first time, and it's especially unfair to raise it in a reply brief on appeal. As opposed to the main brief, we didn't even get a chance to, you know, brief that because of that. And I just want to, on that after the fact evidence, I just wanted to briefly tell the court that I'm sure the court's aware of the McKinnon decision from the Supreme Court that came out of this circuit dealing with after the fact evidence in the employment discrimination context. This court has subsequently, in a case called Kearns v. Wella, 114 Fed Third 566, decision by Judge Boggs, says that the Supreme Court's decision in McKinnon about after the fact evidence is really, applies only in the employment discrimination context. And if you are outside the employment discrimination context, it is appropriate to consider after the fact evidence, such as the FBI affidavit. Unless your honors have any other questions, I. Okay. Thank you, counsel. Time reserved for rebuttal? Clerk, how much? Yes, ma'am. Thank you, your honor. Let me start off with this public, whole public records idea. The argument of Freddie Mac goes completely contrary to Judge Cole's opinion in Massa v. Columbus, which ironically, they cited, where Judge Cole wrote, public records can only be considered where they're not open to factual dispute. But we dispute here. And that really. You don't dispute, though, your own affidavit. No, your honor. No, your honor. That's attached, so you have those in. Right. But this FBI affidavit, which by the way, was filed the day of the oral argument on the 12B6, all that. I think, I guess the question that, recognizing the concerns of the power of Freddie Mac, it seems to me that what it boils down to is that you would say your client has figured out a way to get additional monies that aren't specifically prohibited. You think you have a right to do that. There's no specific prohibition. And I guess what I'm struggling with is, well, let's say you have figured out a way, but doesn't Freddie Mac then have the ability to say, okay, you want to do an end run around my rules? It's costing me money every time I deal with you. That hurts the entire liquidity in the secondary mortgage market. I'm not going to do business with you. I agree, Judge. If this were a mere refusal to deal with the plaintiffs, we would have no appeal. But here, as yourself and Judge Boggs brought up, in Exhibit A, ID page 40, they say, quote they, other parties are prohibited from doing business with Freddie Mac either directly or indirectly. If we look at Mr. Pearson's statement to the Michigan State Authority, they don't just want to not do business with Elias and his entities. They don't want anyone to do business with him. Well, they don't want anybody that they do business with. I mean, we understand they're a big player in the market, but there's no allegation in the complaint that they're the only player in the market, right? That is correct, Judge. But this is just like the Cloris situation where one dominant actor can go after suppliers and say, don't supply my retailer. And that's what happened here. And they do it through. You would agree that Freddie Mac has the ability to say to you, I'm not going to deal with you because $2,500 pro rata tax money is mine and you think you've figured out a way to take it, I'm not going to deal with you anymore. So you concede that that's okay. That is okay, but they can't call my client a fraud, which is what the exclusionary list does through their own examples and their own two internet website articles where they say we put perpetrators on the exclusionary list. The other article says that if you want to prevent short sale fraud, go look at the exclusionary list. So that is a statement that my clients committed fraud. And that is actionable under the defamation counts. And it's clearly they lose privilege with things such as Pearson's statement that our real motive is to put you out of business, not just deal with you. Council, I think your time has expired. I had one question. You just responded and you said something like, this is like Clor. Cloris, the case we cited, Justice Black's opinion. Okay, just spell it. K-L-O-R-S. Okay, got it. From the 40s. Okay. Thank you, your honor. Thank you. The case will be submitted. The clerk may call the next case.